IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JEB STUART AUCTION SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:14-cv-00047 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WEST AMERICAN INSURANCE COMPANY, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on cross-motions for summary judgment. I heard oral arguments on the motions on August 6, 2015. For the reasons stated herein, I will grant in part Plaintiff's motion for partial summary judgment [ECF No. 23] and deny Defendant's motion for summary judgment [ECF No. 27]. This matter will proceed to trial on the questions of (1) damages and (2) bad-faith denial of Plaintiff's claim, see Va. Code Ann. § 38.2-209.

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff Jeb Stuart Auction Services LLC ("Jeb Stuart") is a Virginia-based limited liability company. Its manager and sole-member is Robin Hiatt ("Hiatt"). Jeb Stuart's principle place of business is in Stuart, Virginia.

Defendant West American Insurance Company ("West American") in an Indiana-based insurance provider. Burch-Hodges-Stone, Inc. ("BHS") is a Virginia-based insurance agency which sells, among other things, commercial insurance policies provided by West American. Dianne Via-Fulcher ("Via-Fulcher") is an agent with BHS, and her office is located in Martinsville, Virginia.

On July 14, 2009, Hiatt pleaded guilty to three counts of obtaining money by false pretenses in violation of Va. Code Ann. § 18.2-178. Hiatt entered an Alford plea on the charge that he "[paid] three individuals to wreck cars as part of a fraudulent scheme to receive insurance proceeds". (Dep. of Robin Hiatt 32:6–8, June 10, 2015.)

In 2010, Hiatt formed Jeb Stuart. On or about February 11, 2014, Jeb Stuart purchased property located at 219–221 Aaron Street, Martinsville, Virginia, from C&S Property Management, Inc. ("C&S").

During the month of January 2014, Hiatt met with Via-Fulcher regarding purchasing a commercial insurance policy on Jeb Stuart's property in Martinsville. As a result of those meetings, BHS submitted an unsigned application for insurance to West American on January 13, 2014, and a signed application on January 22, 2014. Hiatt signed the second application ("the Application").

On the Application, under the section titled "Applicant Information," "Jeb Stuart Auctions Services LLC" and C&S are listed under "Name." In that same section, the box next to "LLC" is checked (as opposed to "Individual"). Hiatt is listed under "Mailing Address." Hiatt is also listed as "Inspection Contact" and "Accounting Records Contact." Under the section asking for the date the business was started, Hiatt answered, "01/01/93."

On Page Two of the Application, several questions are propounded. Specifically, Question Eight asks:

> During the last five years (ten in RI), has any applicant been indicted for or convicted of any degree of the crime of fraud, bribery, arson or any other arson-related crime in connection with this or any other property?

Hiatt answered "No" to Question Eight. The Application does not expressly define "Applicant" as it relates to Question Eight.

A few days after he signed the Application, Hiatt returned to Via-Fulcher's office to discuss whether his 2009 convictions were responsive to Question Eight. According to Hiatt, he told Ms. Via-Fulcher that he had some felony convictions in the past and he did not know what he needed to do. (Hiatt Dep. 45:6–8, June 10, 2015.) He brought a folder containing his criminal documentation and offered it to her. (Id. 45:8–9.) Via-Fulcher asked, "Is any of these charges to Jeb Stuart Auction Services"? (Id. 45:12–13.) Hiatt told her they were not, and she responded: "Well, this is the insurance for Jeb Stuart Auction, not you." (Id. 45:15–16.) Via-Fulcher denies that this conversation ever took place and counters that Hiatt only stated that he had "financial problems" in the past. (See Dep. of Dianne Via-Fulcher 87:12–15, 106:11–16, May 14, 2015.)

Hiatt signed the Application on January 22, 2014, under the section titled "Applicant Signature." Two lines above the signature, however, the Application states: "The undersigned is an authorized representative of the applicant and represents that reasonable inquiry has been made to obtain the answers to questions on this application. He/she represents that answers are true, correct and complete to the best of his/her knowledge." Hiatt signed the Application within five years of his conviction for a crime of fraud. In response to the Application (which did not relay information regarding Hiatt's convictions), West American issued a commercial property insurance policy to Jeb Stuart ("the Policy").

Hiatt concedes that his Alford plea on his 2009 charges resulted in a conviction was for a "crime of fraud." (Hiatt Dep. 32:3–5.)

On or about March 3, 2014, a little over two months after Hiatt signed the Application, a fire occurred at Jeb Stuart's property in Martinsville. The fire caused damages that were covered by the Policy. Nevertheless, on August 6, 2014, West American informed Hiatt that it was

denying coverage "due to material misrepresentation in [the] application for insurance dated January 22, 2013," and that the "insurance contract was obtained through false information and will be voided from its inception (also known as 'void *ab initio*," meaning 'from the beginning')."  (Compl. Ex. 5 [ECF No. 1-6].)  Specifically, West American stated that the answer to Question Eight on the Application was false.  It determined that Hiatt's convictions warranted a "yes" response to Question Eight.  According to West American's underwriters, "had West American known the truth about the criminal conviction history of Mr. Hiatt when he applied for the insurance contract on January 22, 2014, it would not have issued the insurance contract to Jeb Stuart Auction Services LLC based on the moral hazard of insuring an applicant with a criminal conviction for a crime based in fraud, within the prior five years."  (Id.)

On October 10, 2014, Jeb Stuart brought an action in this Court against West American. In Count I of its Complaint, Jeb Stuart alleges that West American "breached its obligation by denying coverage and failing to make full payment under the Policy."  (Id. ¶ 34.)  Count II seeks "a declaration as to West American's obligation to provide insurance coverage to [Jeb Stuart] for damages and losses arising from the March 3, 2014[,] fire."  (Id. ¶ 43.)  In Count III, Jeb Stuart alleges, "West American's conduct . . . establishes that it acted in bad faith by denying coverage, failing to adjust the loss in good faith, voiding the Policy *ab initio*, and refusing to make payments under the Policy."  (Id. ¶ 45.)  It asserts that, "in addition to judgment for the amount of the loss, [Jeb Stuart] is entitled to payment of its costs and attorneys' fees."  (Id. ¶ 46.)

West American filed its Answer on November 19, 2014.  [ECF No. 12.]  In addition to denying Jeb Stuart's allegations, West American asserted two counterclaims.  Count I seeks to rescind the Policy, and Count II asserts that "West American is entitled to a declaration that the Policy is void *ab initio* and of [no] force or effect."  (Counterclaim ¶¶ 26–33.)

- 4 -

Case 4:14-cv-00047-JLK-RSB   Document 39   Filed 08/13/15   Page 4 of 13   Pageid#: 923

Jeb Stuart filed its Motion for Partial Summary Judgment on June 12, 2015. [ECF No. 23.] In its Motion, Jeb Stuart seeks judgment in its favor on: liability in Count I of the Complaint; Count II of the Complaint in its entirety; liability on Count III of the Complaint; and Counts I and II of the Counterclaim in their entirety. It asks that I reserve ruling on damages under Counts I and III of the Complaint. West American filed a Motion for Summary Judgment on June 26, 2015. [ECF No. 27.] It seeks entry of judgment in its favor on all counts of the Complaint and Counterclaim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249. It has

been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

### III.     DISCUSSION

The issue before the court concerns the interpretation of an application for insurance. Jeb Stuart contends that questions directed to the "applicant" referred only to the corporate entity; West American contends that the term "applicant" on the Application also encompassed Robin Hiatt individually.

In diversity cases, a federal court applies the substantive law of the state in which it sits, including that state's choice-of-law rules. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Court resolves contract interpretation questions according to the law of the state where the contract was made. Woodson v. Celina Mut. Ins. Co., 211 Va. 423, 426 (1970). Because the insurance contract between Jeb Stuart and West American was formed in Virginia, Virginia law applies. In Virginia, an insurance policy is a written contract and should be construed accordingly. Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co., 240 Va. 457, 459 (1990).

"Under Virginia law, an applicant for insurance must answer an application truthfully and fully to give the insurer the opportunity to make its own inquiry and determine whether to undertake the risk." Banner Life Ins. Co. v. Noel, 861 F. Supp. 2d 701, 707 (E.D. Va. 2012). In Virginia, an insurer seeking to rescind an insurance contract based on an alleged misrepresentation contained in the application must prove: (1) than an answer or statement was material to the risk when assumed; and (2) that it was untrue. Va. Code Ann. § 38.2-309 (2015). Whether a misrepresentation is made and the terms on which it is made are questions of fact for

the jury (if material issues of fact remain); but, when proved, its materiality is a question for the court.

The parties appear to agree that one question determines the outcome of this case: whether the term "**applicant**" in Question Eight of the Application referred solely to Jeb Stuart Auction Services, LLC, or whether that term also encompassed Robin Hiatt individually. The same concepts that apply to interpreting an insurance policy apply to interpreting the Application. See, e.g., Williams v. Metropolitan Life Ins. Co., 123 S.E. 509, 510–11 (1924). If the term "applicant" includes Robin Hiatt, then his answer to Question Eight was false and West American properly rescinded the insurance policy. If he was not included in that term, then his answer was truthful and West American cannot succeed on their claim to rescind the policy.

The term "applicant" is not ambiguous. It refers only to the party applying for insurance. In reaching this conclusion, one need look no further than the Application itself. Although it does not explicitly define the term "applicant," only one party is listed under the heading "Applicant Information—Name:" Jeb Stuart Auction Services LLC. Moreover, under the "Crime Section," only Jeb Stuart Auction is listed as "Applicant." Under the "Equipment Floater Section," only Jeb Stuart Auction is listed as "Applicant." Under the Commercial General Liability Section," only Jeb Stuart Auction is listed as "Applicant." And under the "Additional Interest" section, only Jeb Stuart Auction is listed as "Applicant." (Compl. Ex. B. [ECF No. 1].)

The Policy itself confirms that Jeb Stuart, not Hiatt, applied for insurance in January 2014. The Policy insured property owned by Jeb Stuart, not Hiatt. Premiums were owed by Jeb Stuart, not Hiatt. In the event of a loss, the Policy would pay out to Jeb Stuart, not Hiatt. Only Jeb Stuart, not Hiatt, could sue to enforce the Policy. In fact, only Jeb Stuart has brought suit

- 7 -

Case 4:14-cv-00047-JLK-RSB   Document 39   Filed 08/13/15   Page 7 of 13   Pageid#: 926

here.  If Hiatt were actually an applicant and beneficiary under the Policy, surely he would have joined this action as a plaintiff.

Both dictionary and statutory definitions are helpful in confirming this conclusion.  First, Virginia defines "applicant" in Virginia Code Ann. § 38.2-602 as "any person who seeks to contract for insurance coverage other than a person seeking group insurance that is not individually underwritten."[1]  As stated above, the Record reveals that Jeb Stuart—and only Jeb Stuart—sought to contract for insurance coverage.  As an LLC, Jeb Stuart can only act through its agents.  See id. § 13.1-1022(A).  There is nothing in the Record to suggest that Hiatt was acting individually when he completed and signed the Application.  The Policy that he sought covered property owned by the LLC; if the Policy was granted and a loss was suffered, the LLC would be made whole.  Nothing in the Application suggests any coverage for Hiatt personally or for property owned by him personally, and there is nothing to suggest a direct benefit for him.

Dictionary definitions corroborate that Jeb Stuart was the only applicant.  Black's Law Dictionary defines "applicant" as "one who requests something; a petitioner, such as a person who applies to letters of administration."  Applicant, Black's Law Dictionary 108 (8th ed. 2004). Random House Dictionary offers a similar definition: "a person who applies for or requests something."  Applicant, Random House College Dictionary 65 (Rev. ed. 1980).  And Merriam Webster gets to the point succinctly: an applicant is "one who applies."  Applicant, Merriam Webster's Collegiate Dictionary 56 (10th ed. 1996).  Under all of these definitions, Jeb Stuart (acting through its agent, Robin Hiatt) was the applicant.  Hiatt sought *nothing* from West American in his personal capacity.  Thus, he was not an applicant,

---

[1] Admittedly, this section does not directly apply to the type of insurance policy at issue here, see Va. Code Ann. § 38.6-601(E), but its guidance in this area of law is revealing.

- 8 -

West American offers several rationales to avoid this ruling, but they are unavailing. First, it argues that the question was clearly aimed at the LLCs members and managers since the LLC only acts through them. This rationale turns Virginia corporate law on its head. An LLC "is an entity that, like a corporation, shields its members from personal liability based on actions of the entity." Gowin v. Granite Depot, LLC, 272 Va. 246, 254 (2006) (citing Cheatle v. Rudd's Swimming Pool Supply Co., 234 Va. 207, 212 (1987) ("The proposition is elementary that a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it. This immunity of stockholders is a basic provision of statutory and common law and supports a vital economic policy underlying the whole corporate concept.").) The LLC structure would have no meaning if single-member LLCs were one and the same with the single member. West American's position would require this court to hold that, under Virginia law, single-member LLCs are not offered the same protections as larger LLCs, and that the sins of the members are held by the LLC. That is simply not the law. See Va. Code Ann. § 13.1-1019 ("Except as provided [herein] . . . or . . . in the articles of incorporation, no member, manager, organizer or other agent of a limited liability company shall have a personal obligation for any liabilities of a limited liability company."). If West American were concerned about the sins of the LLC's sole member, it should have asked about those sins. Here, it did not.

Next, West American contends that the "clear purpose" of the Application was risk assessment, so the question was clearly aimed at Hiatt individually since he was the sole member of the LLC. There is no doubt whatsoever that the Application was designed for risk assessment; that does not mean, however, that the questions on the Application must get at the most logical information to that end. Question Eight asked a clear question—has Jeb Stuart ever been indicted for or convicted of fraud of arson? If West American wanted different information
- 9 -

related to its risk assessment, it is obliged to ask a different question. Neither the applicants for insurance nor this Court are in the business of divining what West American *really* wants to know, and then turning application questions on their head to interpret them to mean what they do not say.

"In every case, the fundamental inquiry must be as to the intention of the parties, to be gathered from the words of the policy. Regardless of any other rules of construction, the real intent and agreement of the parties and what they intended and meant when they entered into the contract of insurance must govern the court in determining the respective liabilities." 10A Michie's Jurisprudence, Insurance § 24 (2012). Here, there is no doubt that risk assessment was West American's purpose in propounding the questions that it did. The problem is that it only asked about the *applicant*; it did not ask about the applicant's owner, member, manager, or representative. "The intention of the parties must be determined *from what they actually said and not from what it may be supposed they intended to say*." Id. (emphasis added). In insisting that "applicant" means more than it says, West American asks the court to "reform or correct [the Application] because of unforeseen conditions arising after its execution." Id. (citing Carter v. Carter, 202 Va. 892, 896–97 (1961)). That is not the court's job.

West American maintains that Hiatt's answer to "Date Bus Started" indicates that he knew the Application was actually referring to him personally. I find no merit to this argument. First, it is what the questions ask—not what Hiatt *thinks* the questions ask—which is relevant. Second, and more to the point, the answer was correct. West American does not dispute that the auction business that Jeb Stuart acquired in 2010 was started in 1993. Thus, the inconsistency West American claims simply does not exist.

As an alternative argument, West American argues that limiting "applicant" to Jeb Stuart renders Question Eight meaningless because an LLC cannot commit arson. Thus, it follows that the Questions were clearly directed at the individual, not the LLC. This argument ignores the obvious; this generic application was written to apply to *both* individuals *and* corporations, depending on who is applying for insurance. For example, on page 1 the applicant is asked to indicate whether it is a corporate entity or an individual. Likewise, Question One ("Is the Applicant a subsidiary of another entity?"), Question Two ("Does the Applicant have any subsidiaries?"), and Question Eleven ("Has business been placed in trust?") on page two are clearly aimed at a corporate applicant, while others seem directed at individual applicants (*i.e.*, "Any past losses or claims relating to sexual abuse or molestation allegations . . . .?"). The signature line asks for the "Applicant's Signature" (which would seemingly only refer to individuals), but also contemplates that "[t]he undersigned is an authorized representative of the applicant . . . ." Thus, the fact that an LLC cannot be convicted of arson does not mean the whole question is meaningless; it just means that one question on a generic insurance application was designed to address other scenarios as well.

West American wants to eat its cake and have it too; when a question directed at the LLC does not garner the information it really wants, it asks this court to apply the question to the underlying individuals. In all other instances (or, at least, where it behooves it), West American is content with the questions being directed at the LLC. This is simply untenable. Applicant means what it means: Jeb Stuart. That definition does not change question-by-question based on what the insurer *really* wants to know.

In essence, West American complains of Hiatt's "failure to answer questions which it[] . . did not ask [him]." Williams, 123 S.E. 509, 511. That is not grounds to rescind the Policy. The
- 11 -

As an alternative argument, West American argues that limiting "applicant" to Jeb Stuart renders Question Eight meaningless because an LLC cannot commit arson. Thus, it follows that the Questions were clearly directed at the individual, not the LLC. This argument ignores the obvious; this generic application was written to apply to *both* individuals *and* corporations, depending on who is applying for insurance. For example, on page 1 the applicant is asked to indicate whether it is a corporate entity or an individual. Likewise, Question One ("Is the Applicant a subsidiary of another entity?"), Question Two ("Does the Applicant have any subsidiaries?"), and Question Eleven ("Has business been placed in trust?") on page two are clearly aimed at a corporate applicant, while others seem directed at individual applicants (*i.e.*, "Any past losses or claims relating to sexual abuse or molestation allegations . . . .?"). The signature line asks for the "Applicant's Signature" (which would seemingly only refer to individuals), but also contemplates that "[t]he undersigned is an authorized representative of the applicant . . . ." Thus, the fact that an LLC cannot be convicted of arson does not mean the whole question is meaningless; it just means that one question on a generic insurance application was designed to address other scenarios as well.

West American wants to eat its cake and have it too; when a question directed at the LLC does not garner the information it really wants, it asks this court to apply the question to the underlying individuals. In all other instances (or, at least, where it behooves it), West American is content with the questions being directed at the LLC. This is simply untenable. Applicant means what it means: Jeb Stuart. That definition does not change question-by-question based on what the insurer *really* wants to know.

In essence, West American complains of Hiatt's "failure to answer questions which it[] . . did not ask [him]." Williams, 123 S.E. 509, 511. That is not grounds to rescind the Policy. The

Record reveals that Hiatt answered Question Eight truthfully because Jeb Stuart, the applicant, had not "been indicted for or convicted of any degree of the crime of fraud, bribery, arson, or any other arson-related crime" in the last five years. If West American wanted to know if the applicant's *representative* had been convicted of fraud, or if any member of the LLC had been indicted for arson, it was obliged to ask that question. It did not, so it cannot be heard to complain that Hiatt did not volunteer that information.

Turning to the issue of whether West American's denial of Jeb Stuart's claim was in bad faith (Compl. ¶¶ 44–46), the Supreme Court of Virginia has stated:

> [I]n evaluating the conduct of an insurer, courts should apply a reasonableness standard. A bad-faith analysis generally would require consideration of such questions as whether reasonable minds could differ in the interpretation of policy provisions defining coverage and exclusions; whether the insurer had made a reasonable investigation of the facts and circumstances underlying the insured's claim; whether the evidence discovered reasonably supports a denial of liability; whether it appears that the insurer's refusal to pay was used merely as a tool in settlement negotiations; and whether the defense the insurer asserts at trial raises an issue of first impression or a reasonably debatable question of law or fact.

CUNA Mut. Ins. Soc. v. Norman, 237 Va. 33, 38 (1989). The Supreme Court of Virginia is currently considering the question of whether "bad-faith" denial is a question of law for the court or fact for the jury. See REVI, LLC v. Chicago Title Ins. Co., Record No. 141562 (Va. granted Feb. 24, 2015). Therefore, I will deny West American's motion for summary judgment on this issue.

Even if the Supreme Court of Virginia were not currently considering the issue, disputes of material fact preclude summary judgment on this claim. Specifically, although not enunciated as a factor in Norman, I believe a fact-finder must examine the question of whether Hiatt accurately portrayed his criminal record to Via-Fulcher. I believe the facts surrounding those

- 12 -

Case 4:14-cv-00047-JLK-RSB Document 39 Filed 08/13/15 Page 12 of 13 Pageid#: 931

conversations are highly relevant, although not necessarily dispositive. The parties differ vastly on whether Hiatt was honest or circumspect in the information he gave Via-Fulcher. If he was honest and West American was on notice of his criminal record, I do not believe West American's cancellation of the policy could be characterized as in "good faith." On the other hand, if Hiatt intentionally misled Via-Fulcher regarding his criminal record, it is possible that West American's position, although ultimately incorrect, was undertaken in good faith. Because the facts surrounding that conversation are in dispute, summary judgment is not appropriate on Count III of the Complaint.

### IV. CONCLUSION

"Applicant" refers only to the party seeking to purchase insurance. As such, West American wrongfully rescinded the Jeb Stuart's insurance policy. Jeb Stuart is entitled to summary judgment on liability under Count I, Count II in its entirety, and West American's Counterclaim. Count III and damages under Count II are not ripe for disposition and will proceed to trial.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 13th day of August, 2015.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE