IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JEB STUART AUCTION SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:14-cv-00047 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WEST AMERICAN INSURANCE COMPANY, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on cross-motions for summary judgment. I heard oral arguments on the motions on August 6, 2015. For the reasons stated herein, I will grant West American Insurance Company's motion for summary judgment [ECF No. 49] and deny Jeb Stuart Auction Services, LLC's motion for summary judgment [ECF No. 45].

## I.     STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Plaintiff Jeb Stuart Auction Services, LLC ("Jeb Stuart") is a Virginia-based LLC owned and operated by Robin Hiatt. In January 2014, Jeb Stuart purchased property on Aaron Street in Martinsville, Virginia, as its main headquarters. Jeb Stuart purchased the building for $325,000.00.

Jeb Stuart and Defendant West American Insurance Company ("West American") entered into a contract for insurance with effective dates of January 22, 2014, through January 22, 2015 ("the Policy"). The Policy covered Jeb Stuart's commercial business property located in Martinsville. The property was formerly a furniture factory and consisted of several interconnected brick buildings, totaling more than 500,000 square feet. As is relevant here, the

- 1 -

Policy covered damage by fire, and the Policy limits totaled $4,050,000.00; the applicable deductibles totaled $5,000.00.

The Policy provided as follows:

**4. Loss Payment. a.** In the event of loss or damage . . . We [West American] will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation condition.

\* \* \*

**C.** With respect to the building described in the above Schedule, the following replaces items **a.** and **b.** of the VALUATION Loss Condition:

**1.** If you contract for repair or replacement of the loss or damage to restore the building shown in the above Schedule for the same occupancy or use, within 180 days of the damage unless we and you [Jeb Stuart] otherwise agree, we will pay the smallest of the following, **a., b., c.,** or **d.**:
  **a.** The Limits of Insurance shown in the above Schedule as applicable to the damaged building.
  **b.** In the event of total loss, the cost to replace the damaged building on the same site (or on a different site if the relocation is required by an ordinance or law . . . ), with a less costly building that is functionally equivalent to the damaged building.
  **c.** In the event of a partial loss:
    **1)** The cost to repair or replace the damaged portion of the building with less costly material, if available, in the architectural style that existed before the loss or damage occurred; and
    **2)** The amount you actually spend to demolish and clear the site of undamaged parts of the building . . . .
  **d.** The amount you actually spend:
    **1)** That is necessary to repair or replace the lost or damaged building with less costly material if available; and
    **2)** To demolish and clear the site of undamaged parts of the building . . . .

**2.** If you do not make a claim under Paragraph **1.** above, we will pay the smallest of the following, **a., b.,** or **c.**:
  **a.** The Limit of Insurance shown in the above Schedule as applicable to the damage building;
  **b.** The "market value" of the damaged building, exclusive of the land value at the time of loss; or
  **c.** The amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation.

This portion of the Policy is referred to as the "Functional Building Valuation," or "FBV." The Policy defined "market value" to mean "the price at which the property might be expected to realize if offered for sale in a fair market."

Also applicable to the present situation, the Policy stated:

> **3. Duties In The Event Of Loss Or Damage**
> a.    You must see that the following are done in the event of loss or damage to Covered Property:
> \* \* \*
> **(7)**    Send to us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.
> \* \* \*
>
> **4. Loss Payment.**
> \* \* \*
> **c.**    We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

On March 3, 2014, the property in Martinsville was destroyed by fire. To date, the cause of the fire has not been determined.

On or about May 16, 2014, Jeb Stuart requested an extension to the 180-day period to "contract for repair or replacement."

On March 26, 2014, West American, through its adjuster Anthony DeCesare, requested that Jeb Stuart submit a sworn proof of loss statement. Jeb Stuart's attorney, Philip Gardner, responded on April 7, attaching a proof of loss statement signed by Robin Hiatt, Jeb Stuart's owner. The proof of loss stated:

> 1. Replacement Cost of Property: at the time of loss…..$ IN EXCESS OF COVERAGE
> 2. Replacement or Repair Cost: at the time of the loss was……...$ SEE ATTACHED
> 3. Applicable Depreciation or Betterment:……………………….$_____
> 4. Actual Cash Value Loss: (line 2 minus line 3)…………......$_____
> 5. Deductible:……………………………………………….. $ SEE ATTACHED
> 6. ACTUAL CASH VALUE CLAIM: (line 4 minus line 5).....$4,050,000.00 BLDG ONLY

- 3 -

Hiatt asserted, in an attachment to the proof of loss:

> It is not possible to fill out the actual cash value and replacement portion of the proof of loss at this time. The insured lost 500,000 square feet of storage space which cannot be repaired and cannot be replaced to the original condition. . . . Accordingly, [because the replacement value would far exceed the policy limits,] the insured hereby makes claim for the full coverage of the two buildings being $4,050,000.00.

[ECF No. 50-4.]

In June, Jeb Stuart advised West American that it was still in business and had rented approximately 10,000 square feet in an effort to stay in business. Jeb Stuart incurred approximately $24,000.00 in rental fees associated with the building.

On July 2, 2014, West American granted Jeb Stuart a sixty-day extension to the 180-period "to contract for repair or replacement," "or until 11/3/14, whichever is longer."

On July 18, 2014, Erik Anderson of Wakelee Associates, LLC, reported to West American that his estimate for the "Functional Replacement Cost" for the insured buildings was over $23,000,000.00. Despite several requests, West American did not share this information with Jeb Stuart until it was required to do so in discovery in the present action.

By letter dated August 6, 2014, West American advised Jeb Stuart that it was denying coverage for the March fire, and asserted that Jeb Stuart had lied on its application for insurance. As a result, West American declared that the Policy was void *ab initio*. That was incorrect, and Jeb Stuart was granted summary judgment on this issue.

After West American wrongfully declared the policy void *ab initio*, Jeb Stuart submitted a plan to the City of Martinsville to construct a new facility on the insured premises. According to Robin Hiatt, Jeb Stuart lacked the financial resources to commit to the project. (Aff. of Robin Hiatt ¶ 9, Aug. 31, 2015 [ECF No. 46-7].)

The parties agree that, under Paragraph C.1 of the FBV, the limits of the Policy are $4,050,000.00 (C.1.a.). Estimates for damages under Paragraph C.1.b range between $15,000,000.00 and $23,000,000.00. Paragraph C.1.c is not applicable, as the fire resulted in a complete loss. There is no agreement as to Paragraph C.1.d. Under Paragraph 2 of the FBV, the parties again agree that the limits of the insurance are $4,050,000.00 (C.2.a), the "market value" of the buildings is $255,000.00 (C.2.b), and the "amount it would cost to repair or replace the damaged building" is between $15,000,000.00 and $23,000,000.00 (C.2.c.). If Jeb Stuart is limited to damages under Paragraph 2, it would be entitled to recover $255,000.00, plus other incidental damages.

Jeb Stuart filed its Complaint against West American on October 10, 2014, alleging that West American wrongfully rescinded the Policy. The parties filed cross-motions for summary judgment in June of this year, and I ultimately granted Jeb Stuart's motion. I held that West American wrongfully rescinded the Policy, and that Jeb Stuart was entitled to coverage. The matter was set for trial beginning September 22, 2015, but the parties moved to extend the trial date to give the Court time to address the present issue with regard to possible damages. The parties asserted that decision on this issue could obviate the need for a trial. Jeb Stuart filed its second motion for summary judgment on September 1, 2015, and West American filed its second motion for summary judgment (and response to Jeb Stuart's motion) on September 11, 2015. Jeb Stuart responded to West American's motion on September 18, 2015. I heard oral arguments on the motions on September 22.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); George & Co. LLC

v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009). A genuine dispute of material fact exists "[w]here the record taken as a whole could . . . lead a rational trier of fact to find for the nonmoving party." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citation omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute cannot be created where there is only a scintilla of evidence favoring the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists for trial. Anderson, 477 U.S. at 249. It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

### III. DISCUSSION

Jeb Stuart contends that three occurrences—two of West American's making—hindered it from fulfilling the condition precedent in the FBV which required Jeb Stuart to contract for repair or replacement. First, Jeb Stuart argues that it could not afford to contract for repair or replacement without proceeds from the Policy. Next, it contends that West American, by rescinding the Policy, deprived it of the 180 days in which it was entitled to make its decision regarding repair or replacement. Finally, Jeb Stuart argues that West American did not "participate" in the adjustment process by providing its estimates for functional replacement

value to Jeb Stuart. The evidence, however, establishes that West American's actions did not "hinder" Jeb Stuart from contracting to repair or replace the destroyed property so as to excuse the condition precedent in Paragraph C.1 of the Functional Building Valuation ("FBV").

"The prevention doctrine is a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his performance, the condition may be waived or excused." Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 725 (4th Cir. 2000) (citing Restatement (Second) of Contracts § 245 (1981)). Virginia law recognizes the prevention doctrine. See Parrish v. Wightman, 34 S.E.2d 229, 232 (Va. 1945).

Application of the prevention doctrine does not require proof that the condition "would have occurred 'but for' the wrongful conduct of the promisor;" rather, it is enough to show that the conduct "'contributed materially' to the non-occurrence of the condition." Moore Bros. Co., 207 F.3d at 725 (citing Restatement (Second) of Contracts, supra, § 245 cmt. b). The Supreme Court of Virginia has specifically noted, "It is as effective an excuse of performance of a condition that the promisor has hindered performance as that he has actually prevented it." Parrish, 34 S.E.2d at 232.

Robin Hiatt's testimony establishes that it was Jeb Stuart's lack of capital to finance repair or replacement—not the rescission of the Policy or the lack of West American's appraisal—that was responsible for its failure to satisfy the applicable condition precedent. For example, in his affidavit, Hiatt states the following:

> 6. Without the coverage to which it is entitled under its policy with West American Insurance Company, Jeb Stuart lacks the financial resources to rebuild the buildings located on the insured property.
> 7. Even if it found a bank willing to loan it money given the company's financial situation since March 3, 2014, Jeb Stuart believes it would be financially unwise to incur debt in an effort to replace its buildings, unless it receives the funds to do so, to which

> it is entitled, under its coverage with the policy issued by West American Insurance Company.
> . . .
> 9.     After West American declared the Jeb Stuart policy void *ab initio*, Jeb Stuart considered constructing a new building on the insured premises, and submitted a building plan to the City of Martinsville. However, without the coverage proceeds from West American, Jeb Stuart lacked the financial resources to finance this construction.

(Aff. of Robin Hiatt ¶¶ 6–7 & 9, Aug. 31, 2015 [ECF No. 46-7].) All of these statements place the blame for Jeb Stuart's inaction on the lack of *capital*, not on West American's declaration that the Policy was void. In fact, Hiatt stated that, *after* the Policy was declared void Jeb Stuart considered rebuilding the property but failed to do so because it "lacked the financial resources to finance this construction." (Id. ¶ 9.) Thus, even *after* the rescission of the Policy, Jeb Stuart was still considering repairing or replacing the damaged structure. In light of that admission, it strains credibility to say that it was the rescission which prevented Jeb Stuart from action.

Jeb Stuart argues that its lack of funds should warrant application of the prevention doctrine, but it is wrong. Just as in Whitmer v. Graphic Arts Mutual Insurance Co., Jeb Stuart "can point to no policy provision imposing a duty upon [West American] to tender [Jeb Stuart] the cash value of [its] property prior to its replacement. Perhaps such a provision would be advisable, but [the Court] cannot rewrite the policy to so provide." 242 Va. 349, 356 (1991). Nothing in the Policy entitles Jeb Stuart to any proceeds under Paragraph C.1 of the FBV prior to completion of the construction of a replacement building. Under that section, one of the possible measures of damages is the amount that the insured "actually spends," an amount that may only be determined once repair or replacement is complete. Because the lack of proceeds under the Policy was Jeb Stuart's sole reason for not contracting for repair or replacement, the prevention doctrine has no applicability.

- 8 -

Case 4:14-cv-00047-JLK-RSB   Document 59   Filed 10/01/15   Page 8 of 10   Pageid#: 1684

Jeb Stuart's reliance on Zaitchick v. American Motorists Insurance Co. is similarly misplaced. The policy at issue in that case contained a provision which permitted an insured to recover "necessary funds to begin rebuilding their home, and subsequently upon completion of the construction, obtain additional amounts up to the replacement value." Zaitchick v. Am. Motorists Ins. Co., 554 F. Supp. 209, 217 (1982). There is no such provision in Jeb Stuart's policy, and West American's refusal to pay up front is irrelevant.

The same is true of Jeb Stuart's argument that West American was obliged to turn over the appraisal it commissioned while attempting to determine the functional replacement cost. Although the Policy does leave the value determination to West American, nothing in the Policy establishes that Jeb Stuart had a right to consider West American's internal information when making its decision. While it is true it would have made Jeb Stuart's decision easier, and it may have been a beneficial provision to have in the Policy, the fact is that "[t]here is no policy provision to support this contention, and it is simply irrelevant." Whitmer, 242 Va. at 356.

Contrary to Jeb Stuart's argument, this case falls squarely within the decision announced in Whitmer. Without capital, Jeb Stuart was unable (and unwilling) to contract for repair and replacement.[1] West American's rescission of the Policy, while unfortunate, was not a motivating factor in Jeb Stuart's decision not to rebuild. The Record is devoid of evidence to support a contrary position.[2]

Because West American's actions did not hinder performance of the condition, Jeb Stuart is limited to damages under Paragraph C.2 of the Policy. At oral argument, West American

---

[1] Robin Hiatt admitted in his affidavit that Jeb Stuart could not afford to build a replacement building (see Hiatt Aff. ¶ 6) and was unwilling to incur debt to do so (id. ¶ 7).

[2] There is one sentence of Robin Hiatt's affidavit that lays the blame at West American's feet (see id. ¶ 11), but that conclusory statement is devoid of further factual support in the Record. It is, at best, the "scintilla of evidence" that Rule 56 is meant to weed out. See Scott v. Harris, 550 U.S. 372, 380 (2007).

- 9 -

Case 4:14-cv-00047-JLK-RSB   Document 59   Filed 10/01/15   Page 9 of 10   Pageid#: 1685

conceded that Jeb Stuart is entitled to damages in addition to the market value of the damaged building (which included, among other things, damages for destroyed personal property). Therefore, the parties are instructed to tender to the Court a stipulation as to the total damages to which Jeb Stuart is entitled under Paragraph C.2. If the parties are unable to agree on the calculation of damages, they are to contact the Court's scheduling deputy to set this matter for trial on the sole issue of damages under Paragraph C.2 of the FBV.

## IV. CONCLUSION

Based on the Record before me, West American's rescission of the Policy did not hinder Jeb Stuart from contracting to replace the damaged property, a condition precedent to certain damages. The evidence establishes that Jeb Stuart's lack of capital prevented it from contracting for replacement. Summary judgment is appropriate, and Jeb Stuart is not excused from the applicable conditions precedent. Because it did not contract for repair or replacement within the allotted time, it is limited to damages under Paragraph C.2 of the FBV.

The clerk is instructed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 1st day of October, 2015.

                                                                         s/Jackson L. Kiser
                                                                         SENIOR UNITED STATES DISTRICT JUDGE